IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

STEVEN SHEROD SIMS,        §
    Plaintiff,        §
                    §
v.        §        Case No. 3:17-cv-3203-L-BT
                    §
ROSALINE CHATHAM-SIMS, et al.,        §
    Defendants.        §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Before the Court are Defendant Dallas Fire-Rescue Department and Dallas Police Department's Rule 12(b)(6) Motion to Dismiss (ECF No. 54) and Defendant Dallas Police Officers Andrew Lehocky, Howard Leftwich, Andrew Fuka, and Lisette Rivera's Rule 12(b)(6) Motion to Dismiss (ECF No. 62). For the reasons stated, the District Court should GRANT Defendants' Motions to Dismiss and DISMISS Plaintiff's claims against them with prejudice.

## Background

Plaintiff filed his original Complaint on November 22, 2017. Compl. (ECF No. 3). Less than a month later, he filed an Amended Complaint. Am. Compl. (ECF No. 6). Ten months after that, Plaintiff filed a Second Amended Complaint without leave of court, causing Defendants to file a motion for clarification regarding the state of the pleadings. Sec. Am. Compl. (ECF No. 38); s*ee* Order (ECF No. 53). As a result, the Court granted Plaintiff one final opportunity to amend his complaint and plead his case. Order (ECF No. 47). Plaintiff then filed his Third Amended

Complaint, the live pleading in this case, on December 17, 2018, asserting more than 23 claims against 42 Defendants. Third Am. Compl. (ECF No. 49).

The District Court summarized the pleadings as set forth in Plaintiff's First Amended Complaint as follows:

> Plaintiff originally filed this action on November 22, 2017, based solely on federal question jurisdiction. Plaintiff's Amended Complaint lists the following persons and entities as Defendants: Rosaline Chatham-Sims; the Garland Police Department; Dallas Police Department; Garland Independent School District ("Garland ISD"); John Doe; John Doe Business; Michael L. Sims; Thomas Williams; Catherine Ann Moses; Winfred Parnell; Jane Doe, Secretary for Garland Police Chief; Mitch Bates; W.S. Coffey; John Speara; Johnny Holiday; Justin Graham; Joe Tanguma; Darren Hemphill; Gradyne Brown; Kevin Brooks; Lieutenant NFN Holmes; Dallas Police Officer NFN Lehocky; Dallas Police Officer NFN Leftwich; Dallas Police Officer NFN Fuka; Dallas Police Officer NFN Rivera; Juana Saloma Acosta; Sam Martin; Dallas Fire Department Paramedic NFN NLN; Texas Ranger NFN NLN; Dwain Downing; Jack Downing; and Federal Agents NFN NLN. Because Plaintiff's Amended Complaint no longer includes the following persons or entities as Defendants, these Defendants are no longer parties to this action as of December 18, 2017: the United States; the Dallas County District Attorney's Office; Parkland Hospital; the City of Dallas; the Dallas Fire Department; the Federal Bureau of Investigation, Dallas Field Office; the State of Texas, Texas Rangers Garland Office; and the State of Texas Child Support Division.
>
> In his Amended Complaint, Plaintiff asserts a multitude of claims, including alleged constitutional violations of the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. §§ 1981 and 1983; violations of the Federal Torts Claim Act; fraud by nondisclosure, "personation," false records, false representations, false pretenses, falsification

2

(obstructing justice), and fraudulent concealment; spoliation of evidence in connection with a summary judgment order entered in favor of Defendants on July 15, 2016, by the 14th District Court, Dallas County, Texas, which relates to cases pending in the 256th District Court, Dallas County, Texas; intentional infliction of emotional distress; abuse of powers; violation of the Health Insurance Portability and Accountability Act ("HIPPA"); aggravated perjury with conspiracy; oppression and harassment; wrongful death of Plaintiff's biological parent; violation of Texas and federal wiretap statutes 18 U.S.C. § 2510[1] and Tex. Civ. Prac. Rem. Code Ann. § 123.001, *et seq.*; defamation; gross negligence; aiding and abetting; arson; and conspiracy. Plaintiff alleges that the foregoing claims were committed by Defendants "with conspiracy." Pl.'s Am. Compl. 26-40.

In support of these claims, Plaintiff alleges that, in January 2015, he caught his wife Rosaline Chatham-Sims responding to a personal e-mail on her work-issued computer and, therefore, believed that she was cheating on him. Plaintiff alleges that, in February 2015, the principal of Garland ISD refused to investigate his claim that his wife, who is employed by Garland ISD as a teacher, was having "workplace romance/sex"; that, after he sent a request for information about his wife's conduct, Garland ISD, the Dallas Police and Fire Departments, the Garland Police Department, and other unnamed federal agents, working under color of law or as members of a hate group, intentionally inflicted emotional distress upon him; deprived him, his family and friends of unspecified rights; tortured his mother to death; and caused him to be homeless from October 2016 to present. *Id.* at 10.

Plaintiff further alleges that in February 2015, his wife and other Defendants "conspired to cause [him] fright and shock by acting like the laser lights that suddenly appeared on his phone were someone coming after him." *Id.* at 11. Plaintiff alleges that he filed a complaint with the Texas Education Agency Review Board regarding this matter, and when he attempted to file a complaint on March 11, 2015, with the internal affairs division of the Garland Police Department, the

---

[1] Section 2510 only includes definitions of terms used in the statute.

lobby personnel at the Garland Police Department "called in a disturbance in the lobby," his wife was telephoned and lied about him suffering from mental disorders, and Garland Police Chief Mitch Bates, Garland Police Officer W.S. Coffey, and Garland Police Lieutenant Holmes made the decision to have Plaintiff transported to the Green Oaks Mental Hospital ("Green Oaks") and held for 72 hours of observation, even though Plaintiff advised that he was not "homicidal or suicidal." *Id.* at 11-12. Plaintiff alleges that he was forced to stay at Green Oaks until he complied with all staff orders, including taking medication against his wishes. Plaintiff alleges that, after taking medication on March 18, 2015, he was rushed to the emergency room of Medical City of Dallas and subsequently released because Green Oaks and the Garland Police Department could not produce the legal documentation needed to hold him any longer at Green Oaks. Plaintiff further alleges that, while at Green Oaks, he learned that an electronic device had been implanted inside him without his consent; that the device was implanted to make it appear that he was having a heart attack while at work; that his wife already knew about the device; and that she worked with other "Unnamed Defendant(s)" to hide it from him. *Id.* at 12.

Regarding other matters, Plaintiff alleges that Defendants made false statements and withheld evidence in a divorce hearing in the 256th District Court that, among other things, involved paternity testing and Plaintiff's claim of infidelity; prevented him from gathering information needed to complete an income tax return; caused his favorite supplement to be removed from the stores where he normally purchased it; told employees of the Dallas Life Foundation that he was a pedophile; wiretapped his computer, stole his inventions and ideas stored on the computer, and downloaded a virus that damaged the documents he was using to prepare for a lawsuit; instructed his health care provider to violate his HIPPA rights; told persons at the Bridge Homeless Shelter that he has AIDS; grabbed his private parts in public; attempted to commit him to a mental hospital; coerced his mother to be the target of a hit-and-run accident and compounded her injury when she had an aneurism; conspired to murder him and refused to

4

investigate his claim of attempted murder; took actions to prevent him from obtaining information regarding the implanted device that caused him to fall down a flight of stairs and lose sleep; and sent him a fraudulent e-mail about a job and asked him to pay for a background check. Plaintiff also alleges that Dr. Carmichael, who is not a named Defendant in this case, was involved in the fire of his business and took him to court over a dispute regarding a riding lawnmower.

Regarding other matters, Plaintiff alleges that Defendants prevented him from gathering information needed to complete an income tax return; caused his favorite supplement to be removed from the stores where he normally purchased it; told employees of the Dallas Life Foundation that he was a pedophile; wiretapped his computer, stole his inventions and ideas stored on the computer, and downloaded a virus that damaged the documents he was using to prepare for a lawsuit; instructed his health care provider to violate his HIPPA rights; told persons at the Bridge Homeless Shelter that he has AIDS; grabbed his private parts in public; attempted to commit him to a mental hospital; coerced his mother to be the target of a hit-and-run accident and compounded her injury when she had an aneurism; conspired to murder him and refused to investigate his claim of attempted murder; took actions to prevent him from obtaining information regarding the implanted device that caused him to fall down a flight of stairs and lose sleep; and sent him a fraudulent e-mail about a job and asked him to pay for a background check. Plaintiff also alleges that Dr. Carmichael, who is not a named Defendant in this case, was involved in the fire of his business and took him to court over a dispute regarding a riding lawnmower.

Mem. Op. and Order 1-5 (ECF No. 29).

Plaintiff's Third Amended Complaint is largely the same as his First Amended Complaint. The Third Amended Complaint only differs materially in that it adds the City of Garland; Mark A. Prine; Dallas County; Dallas County Law

Library; Dallas County Health and Human Services Department; the Kroger Company; and Baylor Medical Center, doing business as Baylor University Medical Center of Dallas, Baylor Medical Center of Garland, Baylor Medical Center of Irving, Baylor Medical Center of Rockwall, and Centennial Medical Center of Frisco, as new Defendants. It also adds back in Defendants "NFN NLN Dallas Fire Department," "NFN NLN, Texas Ranger Field Office" in Garland, the Dallas County District Attorney's Office, and the Texas Child Support Division of the Attorney General's Office.  Third. Am. Compl. 6-8.

In his Third Amended Complaint, Plaintiff also adds claims under 18 U.S.C. §§ 1512 and 1513 to 8.5 "FRAUD BY FALSE PRETENSES WITH CONSPIRACY"; adds a claim under 42 U.S.C. § 1512 to count 6 "FRAUD BY FALSIFICATION"; changes 8.7 "FRAUD BY FRAUDLENT CONCEALMENT" to "OBSTRUCTION"; changes 8.8 "SPOLIATION" to "OBSTRUCTION"; adds a claim under 42 U.S.C. § 1985  to count 11 "VIOLATION OF 42 U.S.C.A. §1983"; and skips from count 17, now styled, "Violation of 42 USC §1986 wrongful NEGLIGt [sic] WITH CONSPIRACY" to count 21, "ARSON WITH CONSPIRACY." *Id.* 36-69.

After count 21, Plaintiff's Third Amended Complaint returns to count 18, "aiding and abetting," then skips to count 20, "CONSPIRACY UNDER 18 USC § 1513(f), 1985(3)," and adds a second count 21, "(AGGRAVATED) Assault and Battery." *Id.* 69-73. After the second count 21, the Complaint skips count 22 but adds count 23,  "Genocide," count 24, "Violation of First (1st) Amendment rights," and several unnumbered claims entitled: "Violation of Right to face accuser(s),"

6

"Unlawful Employment Practices," "Deprivation of, Interference with, and punishment for exercising rights of full and equal enjoyment of goods and services," "RICO ACT," "MAIL FRAUD," Unfair and Deceptive Acts and Practices (UDAP), and "Unjust Enrichment." *Id.* 74-81. With respect to the criminal claims Plaintiff adds to his Third Amended Complaint, he urges "the Federal District Court to award civil relief in cases where there is no established private remedy." *Id.* 4. Plaintiff's Third Amended Complaint also references several individuals who are not named Defendants in the lawsuit. Defendants' Motions are fully briefed and ripe for determination.

## Legal Standards and Analysis

### 12(b)(6)

When deciding a 12(b)(6) motion for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks and citation omitted). To survive Defendant's Motion to Dismiss, therefore, Plaintiff's Complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). This pleading standard does not require "'detailed factual allegations,'" but it does demand more than an unadorned accusation devoid of

factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the facts do not permit the Court to infer more than the mere possibility of misconduct, the Complaint has stopped short of showing that Plaintiff is plausibly entitled to relief. *Id.* at 678 (citing *Twombly*, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, a court may not look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, the pleadings, for the purpose of determining a Rule 12(b)(6) motion, include documents attached to the pleadings and to the motion to dismiss so long as they "are referred to in the plaintiff's complaint and are central to [his] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

# I.

Defendants Dallas Police Department ("DPD") and Dallas Fire-Rescue ("DFR") move to dismiss Plaintiff's claims against them because they are not jural entities subject to suit. "The capacity of an entity to sue or be sued 'shall be

determined by the law of the state in which the district court is held.'" *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) (quoting Fed. R. Civ. P. 17(b)). "Federal courts in Texas have uniformly held that entities without a separate jural existence are not subject to suit." *Torti v. Hughes*, 2007 WL 4403983, at *2 (N.D. Tex. Dec. 17, 2007) (citing *Johnson v. Dallas Police Dep't*, 2004 WL 2964968 at *2 (N.D. Tex. Dec. 15, 2004), *adopted by* 2005 WL 119467 (N.D. Tex. Jan. 18, 2005) (Dallas police department not a proper defendant with jural existence); *Bridges v. Rossi*, 1998 WL 241242 at *5 (N.D. Tex. May 6, 1998) (same)); *see also Darby*, 939 F.2d at 313 ("In order for a plaintiff to sue a city department, it must 'enjoy a separate legal existence.'" (citations omitted)). "Therefore, '[u]nless the political entity that created the department has taken "explicit steps to grant the servient agency with jural authority," the department lacks the capacity to sue or to be sued.'" *Evans v. City of Dallas*, 2017 WL 958607, at *6 (N.D. Tex. Mar. 13, 2017) (citations omitted). "The burden of showing that the city or county department has the capacity to be sued rests on the plaintiff." *Cortes v. Havens*, 2014 WL 6861245, at *6 (N.D. Tex. Dec. 5, 2014) (citation omitted).

Texas law permits home-rule municipalities the authority to organize police and fire departments. *See* Tex. Loc. Gov't Code Ann. §§ 341.003, 342.004(a). Dallas is a home-rule municipality, and its city charter does not grant the Dallas Police Department or Dallas Fire Department the authority to sue or be sued. *See* Dallas, Tex., Charter ch. II, § 1(2). Because the DPD and DFR lack this authority,

Plaintiff may not bring suit against them. Plaintiff cannot cure this pleading defect by amendment; thus, the District Court should dismiss Plaintiff's claims against the DPD and DFR with prejudice.

## II.

Defendant Dallas Police Officers Lehocky, Leftwich, Fuka, and Rivera (the "Officers") move to dismiss Plaintiff's claims against them because he fails "to plead any non-conclusory facts that permit a reasonable inference that any of the Officers violated Sims's rights." Mot. 5 (ECF No. 62).  Plaintiff asserts more than 23 claims against 42 defendants in his Third Amended Complaint, but, other than within the list of "Parties," he does not mention Officers Lehocky, Leftwich, Fuka, and Rivera by name anywhere else in the Complaint. Third Am. Compl. 7. Plaintiff's Complaint, however, does refer to "Dallas Police Officer NFN Gray (#8090)," who is not named as a defendant. *See* Third Am. Compl. 38. It is, therefore, unclear which claims Plaintiff brings against the Officers. Nonetheless, Plaintiff fails to state any nonconclusory facts to support any of his claims with respect to the Officers.

### A. First, Fourth, Fifth, Sixth, and Eighth Amendment

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979)). "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker*, 443 U.S.

at 140; *accord Oliver v. Scott*, 276 F.3d 736, 744 n.10 (5th Cir. 2002). Plaintiff's

Third Amended Complaint brings claims under § 1983 for violations of his First

Amendment rights to free speech and assembly; Fourth Amendment right to be

free from unreasonable searches and seizures; Fifth Amendment rights to a

presentment or indictment of a grand jury and to not be deprived of life, liberty, or

property without due process; Sixth Amendment rights to be informed of the

nature and cause of the accusation against him, to be confronted by witnesses

against him, and to have compulsory process for obtaining witnesses in his favor;

and Eighth Amendment right to be free from cruel and unusual punishment. *See*

Third Am. Compl. 50-53.

i.

Plaintiff fails to plead any nonconclusory facts in support of his First

Amendment claim. The First Amendment provides, in pertinent part, "Congress

shall make no law . . . abridging the freedom of speech, or of the press; or the right

of the people peaceably to assemble." U.S. Const. amend. I. As support for his First

Amendment claim, Plaintiff states that an "unknown federal agent, or person

working under color of law in disguise as a Dallas Area Rapid Transit bus driver

. . . harassed him in relation for . . . exercising his right to free speech." Third Am.

Compl. 50. Under that same section heading, Plaintiff states that more unknown

actors attempted to kill him and his mother in 2015 for his attempt to provide

evidence of a federal crime "to a law enforcement officer or judge." *Id.* Here,

Plaintiff states that his First Amendment rights were violated but alleges no facts

substantiating his claim. Further, he does not allege that any specific Defendant violated his First Amendment rights—instead, Plaintiff names an "unknown federal agent, or person working under color of law" and "[u]nknown Defendant(s), or person(s) working under color of law." *Id.* To the extent Plaintiff intends to plead that a federal agent was responsible, § 1983 only provides a remedy against state actors. *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("Title 42 U.S.C. § 1983 provides a cause of action against '[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .'"). Accordingly, Plaintiff fails to state a First Amendment claim against Defendants the Officers.

ii.

Plaintiff also fails to state a Fourth Amendment claim against Defendants. "The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018) (quoting U.S. Const. amend. IV). In his Third Amended Complaint, under the heading, "13. COUNT 11- VIOLATION OF 42 U.S.C.A. §1983 WITH CONSPIRACY §1985," Plaintiff recites the Fourth Amendment's protections, stating the "4TH AMENDMENT RIGHT TO BE SECURE IN THEIR PERSONS, HOUSES, PAPERS, AND EFFECTS, AGAINST UNREASONABLE SEARCHES AND SEIZURES." Third Am. Compl. 50-51. However, he alleges no facts in support of a Fourth Amendment claim. *See id.*

12

Instead, he appears to state the elements for an intrusion-upon-seclusion tort claim, asserting that "Defendants" intruded upon his seclusion; that the intrusion would be highly offensive to a reasonable person; and that he suffered injury as a result. *Id.* 51. This recitation of the elements of a cause of action are not sufficient to state a claim for relief. *Twombly*, 550 U.S. at 555. Because he does not plead any facts in support of a Fourth Amendment claim, or assert that the Officers violated his Fourth Amendment rights, Plaintiff fails to state a Fourth Amendment claim against the Officers.

### iii.

Plaintiff's Fifth Amendment claims similarly fail. The relevant portion of the Fifth amendment provides, "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury . . . , nor be deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V. Specifically, Plaintiff alleges that his Fifth Amendment rights to a grand-jury indictment and due process were violated. Third Am. Compl. 51. In addition to their contention that Plaintiff has not pleaded sufficient facts to support a Fifth Amendment claim, Defendants maintain that they are entitled to dismissal of Plaintiff's claim against them because "Sims has not alleged that the Officers were [f]ederal actors"; Defendants cite *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996), for the proposition that "the Fifth Amendment does not apply to state actors." Defs.' Mot. 6 n.2.

13

Defendants are correct with respect to the Fifth Amendment's right to a grand-jury indictment. *See McDonald v. City of Chicago*, 561 U.S. 742, 765 n.13 (2010) ("In addition to the right to keep and bear arms [now incorporated by *McDonald*] (and the Sixth Amendment right to a unanimous jury verdict . . .), the only rights not fully incorporated are (1) the Third Amendment's protection against quartering of soldiers; (2) the Fifth Amendment's grand jury indictment requirement; (3) the Seventh Amendment right to a jury trial in civil cases; and (4) the Eighth Amendment's prohibition on excessive fines."). Since the Fifth Amendment's grand-jury indictment requirement has not been incorporated to the states, and the Officers are state actors, Plaintiff's claim regarding that particular Fifth Amendment right fails as a matter of law.

Plaintiff's due process claim, however, does not fail for that same reason. The Fourteenth Amendment's due process clause "legitimately operates to extend to the citizens and residents of the states the same protection against arbitrary state legislation affecting life, liberty, and property as is offered by the 5th Amendment against similar legislation by Congress," and, therefore, Plaintiff's due process claim may properly be considered under the Fourteenth Amendment. *Hibben v. Smith*, 191 U.S. 310, 325 (1903); *accord McGraw v. Heaton*, 2017 WL 1157221, at *4 (N.D. Tex. Mar. 9, 2017), *adopted by* 2017 WL 1155831 (N.D. Tex. Mar. 27, 2017); *Robinson v. Huerta*, 123 F. Supp. 3d 30, 42 n.9 (D.D.C. 2015).

Nevertheless, Defendants are entitled to dismissal of Plaintiff's due process claim because he does not plead with particularity how his right to due process was

violated, nor does he allege that the Officers were involved. "To state a claim under the Due Process Clause, Plaintiff 'must first identify a life, liberty, or property interest protected by the Fourteenth Amendment and then identify a state action that resulted in a deprivation of that interest.'" *Poloceno v. Dall. Indep. Sch. Dist.*, 2019 WL 2568681, at *3 (N.D. Tex. June 21, 2019) (quoting *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995)). In support of his "Fifth Amendment" claims, Plaintiff states, "The stealing of a person's intellectual property, thereby depriving them of opportunity to improve his quality of life violates the 5th Amendment," and "[i]nterfering with a person's development of his intellectual property without proper purchase or payment, thereby denying him of life, liberty, and property, violates his constitutional rights guaranteed by the 5th Amendment." Third Am. Compl. 51. Plaintiff does not plead any nonconclusory facts to substantiate that he was deprived of due process. Accordingly, Plaintiff fails to state a due process claim against the Officers.

iv.

Plaintiff also fails to state a Sixth Amendment claim. The relevant portion of the Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of Counsel for his defence." U.S. Const. amend. VI. With respect to criminal proceedings, "[t]he Constitution provides for a series of protections of the unadorned liberty interest

15

at stake." *M.L.B. v. S.L.J.*, 519 U.S. 102, 139 (1996). These protections "include . . . the Sixth Amendment's guarantees of a speedy and public jury trial, of the ability to confront witnesses, and of compulsory process and assistance of counsel"; however, they "are not available to the typical civil litigant." *Id.* at 139-40. Here, Plaintiff alleges that his Sixth Amendment rights to be informed of the nature and cause of the accusation, to be confronted by witnesses against him, and to have compulsory process for obtaining witnesses in his favor were violated. Third Am. Compl. 53. Defendants are entitled to dismissal of Plaintiff's Sixth Amendment claim because, in addition to this being a civil proceeding, Plaintiff alleges no facts to support a cognizable Sixth Amendment claim. Under "Count 11- Violation of 42 U.S.C. A. § 1983," item "D) 6th Amendment," Plaintiff lists no facts at all. *Id.* Because Plaintiff has not pleaded any nonconclusory facts to support a reasonable inference that the Officers violated his Sixth Amendment rights—or even mentioned the Officers in connection with this claim—the District Court should dismiss Plaintiff's Sixth Amendment claim against them.

v.

Plaintiff further fails to plead any nonconclusory facts in support of his Eighth Amendment claim. The Eighth Amendment provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. Specifically, Plaintiff claims that his "right to protection from cruel and unusual punishment" was violated. Third Am. Compl. 53. Under item "E) 8th Amendment," Plaintiff maintains "unknown Defendants

16

tortured [his] mother to death" and includes unintelligible statements about implanting electronic devices to "perform a summary execution" and to "monitor, manipulate or record a person's sexual or excretory activity," among other things. *Id.* 53-54. Because Plaintiff has not pleaded facts sufficient to support that the Officers violated his Eighth Amendment rights, the District Court should also dismiss Plaintiff's Eighth Amendment claim against them.

### B. Fourteenth Amendment

In his Third Amended Complaint, Plaintiff also brings a claim under § 1983, alleging that his Fourteenth Amendment right to equal protection was violated. Third Am. Compl. 50, 57. "The Equal Protection Clause of the Fourteenth Amendment mandates that '[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws.'" *Lewis v. Ascension Par. Sch. Bd.*, 806 F.3d 344, 353 (5th Cir. 2015) (quoting U.S. Const. amend. XIV, § 1). To "state a claim of racial discrimination under the Equal Protection Clause and section 1983, the plaintiff must allege and prove that [(1) he or she] received treatment different from that received by similarly situated individuals and that [(2)] the unequal treatment stemmed from a discriminatory intent." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015) (quoting *Priester v. Lowndes Cty.*, 354 F.3d 414, 424 (5th Cir. 2004)) (internal quotation marks omitted). To demonstrate discriminatory intent, a plaintiff must establish "that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an

17

identifiable group." *Id.* (citing *Priester*, 354 F.3d at 424) (internal quotation marks omitted). "Allegations of discriminatory intent that are merely conclusory, without reference to specific facts, will not suffice." *Id.* (quoting *Priester*, 354 F.3d at 420). Plaintiff's Third Amended Complaint states that because of Plaintiff's "position as a religious leader or [his] belief that the man is the head of the wife, or both, unknown Defendant(s) used the cruel and unusual punishment of": "giving" him a transgender co-worker, secretly implanting an electronic device within him, and activating that device to inflict emotional distress on him, among other things. Third Am. Compl. 57-58.  Plaintiff, however, fails to plead any facts alleging that the Officers treated him differently than similarly-situated individuals or that such treatment stemmed from a discriminatory intent. In fact, Plaintiff does not mention the Officers in connection with his Fourteenth Amendment equal-protection claim. Therefore, Plaintiff has not pleaded facts sufficient to support that the Officers violated his Fourteenth Amendment rights, and the District Court should also dismiss Plaintiff's Fourteenth Amendment claim against them.

## C. Fraud and Conspiracy

Plaintiff also brings various claims for fraud and conspiracy. Third Am. Compl. 1-2. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555. In addition, "[c]laims alleging fraud must also comply with the supplemental pleading requirements of Rule 9(b), which demand that 'a party must state with particularity the circumstances constituting fraud or mistake.'"

*Kreway v. Countrywide Bank, FSB*, 647 F. App'x 437-38 (5th Cir. 2016) (per curiam) (quoting Fed. R. Civ. P. 9(b)). "'Put simply, Rule 9(b) requires "the who, what, when, where, and how" [of the alleged fraud] to be laid out.'" *Id.* (quoting *Benchmark Elecs., Inc. v. J.M. Huber Corp.,* 343 F.3d 719, 724 (5th Cir. 2003)). Plaintiff asserts claims for "fraud by nondisclosure with conspiracy," "fraud by false personation with conspiracy," "fraud by false records with conspiracy," "fraud by false representation with conspiracy," "fraud by false pretenses with conspiracy," and "fraud by falsification (obstructing justice) with conspiracy," but he has not pleaded at all, let alone with particularity, that the Officers engaged in fraud. *See* Third Am. Compl. 31-43. Accordingly, Defendants are entitled to dismissal of Plaintiff's fraud claims against them.

Additionally, Plaintiff brings several claims "with conspiracy": "intentional infliction of emotional distress with conspiracy," "abuse of powers with conspiracy," "violation of the Health Insurance Portability and Accountability Act ("HIPAA") with conspiracy,"[2] "violation of 42 U.S.C. § 1981 with conspiracy," "violation of 42 U.S.C. § 1983 with conspiracy," "aggravated perjury with conspiracy," "oppression, harassment with conspiracy," "violation of wiretapping act with conspiracy," "defamation with conspiracy," "gross negligence with conspiracy," "aiding and abetting with conspiracy," "arson with conspiracy,"

---

[2] HIPAA does not provide a private cause of action for individuals affected by a health-care privacy breach. *Acara v. Banks*, 470 F.3d 569, 571-72 (5th Cir. 2006) (per curiam) ("We hold there is no private cause of action under HIPAA and therefore no federal subject matter jurisdiction . . . ."). The District Court previously dismissed with prejudice Plaintiff's claim for relief with respect to alleged HIPAA violations for this same reason. Mem. Op. and Order 9 (ECF No. 29) (citing *Acara*, 470 F.3d at 571-72) ("Accordingly, the court will dismiss with prejudice any claim for relief asserted by Plaintiff for HIPAA violations.").

"conspiracy under 18 U.S.C. § 1513," "wrongful death of biological parent with conspiracy," and "neglect with conspiracy." Third Am. Compl. 43-72. Though Plaintiff cites no grounds for a civil-conspiracy claim,[3] his allegations would be insufficient under federal or state law. In the Fifth Circuit, "[i]t is now well settled . . . that 'mere conclusory allegations of conspiracy [under 42 U.S.C. § 1983] cannot, absent reference to material facts, state a substantial claim of federal conspiracy.'" *McAfee v. 5th Cir. Judges*, 884 F.2d 221, 222 (5th Cir. 1989) (per curiam) (quoting *Brinkmann v. Johnston,* 793 F.2d 111, 113 (5th Cir. 1986) (per curiam)). Here, Plaintiff makes only conclusory allegations of conspiracy, and no allegations that the Officers participated in a conspiracy. Accordingly, Plaintiff fails to state a claim for conspiracy against the Officers under federal law.

Under Texas law, "'An actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.'" *Matter of ATP Oil & Gas Corp.*, 711 F. App'x 216, 223 (5th Cir. 2017) (per curiam) (quoting *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)). "'The essential elements are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result.'" *Id.* (quoting *Massey*, 652 S.W.2d at 934). Plaintiff fails to allege facts establishing any

---

[3] 18 U.S.C. § 1513(f) provides, "Whoever conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy." Section 1513, however, only provides for criminal liability. The Court discusses this in subsection E below.

of these essential elements. Accordingly, Plaintiff's Third Amended Complaint also does not state a claim for civil conspiracy under state law against the Officers.

### D. Racketeer Influenced Corrupt Organizations Act ("RICO") and Miscellaneous

Plaintiff also fails to state a RICO claim. *See* Third Am. Compl. 79. To bring a civil-RICO claim, a Plaintiff must establish that there exists: "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 523-24 (5th Cir. 2016) (citations omitted). And, a "pattern of racketeering activity consists of two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity." *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009) (per curiam) (citation omitted). More simply, however, "because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007) (quoting *Crowe v. Henry,* 43 F.3d 198, 206 (5th Cir. 1995)) (internal quotation marks and brackets omitted). Plaintiff does not allege that the Officers agreed to commit predicate acts; he, in fact, pleads no relevant facts in support of his RICO claim. Instead, he states that "the use of unlawful police tactics or noble cause corruption by federal agents, or persons working under color of law constitutes an abuse of powers, abuse of authority, and should increase the punishment to a higher degree." Third Am. Compl. 79. Because

Plaintiff has not pleaded sufficient facts to support that the Officers engaged in a civil-RICO conspiracy, Plaintiff's RICO claim against them should be dismissed.

Plaintiff also asserts claims for "aiding and abetting," "aggravated assault and battery," "genocide," "unlawful employment practices," "deprivation of exercising rights of full and equal enjoyment of goods and services," "mail fraud," "violations of the Unfair and Deceptive Practices Act," and "unjust enrichment." Third Am. Compl. 70-81. To survive a 12 (b)(6) motion, "a plaintiff must plead specific facts, not mere conclusory allegations." *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir. 1992) (citation omitted). It is unclear which claims Plaintiff asserts against Defendants the Officers; however, to the extent that Plaintiff asserts these claims against the Officers, he has failed to allege that they engaged in conduct forming the basis of the allegations for these claims because he does not mention the Officers in the body of his Third Amended Complaint. Accordingly, Plaintiff's "aiding and abetting," "aggravated assault and battery," "genocide," "unlawful employment practices," "deprivation of exercising rights of full and equal enjoyment of goods and services," "mail fraud," "violations of the Unfair and Deceptive Practices Act," and "unjust enrichment" claims against Defendants should be dismissed.

### E. Title 18 of the United States Code and Texas Penal Code

Finally, Plaintiff attempts to bring various claims under Title 18 of the United States Code, "Crimes and Criminal Procedure," and the Texas Penal Code. Apart from Plaintiff's reference to the Federal Wiretapping Act at 18 U.S.C.

§ 2520,[4] Plaintiff cites Title 18 and Texas Penal Code statues that only provide for criminal liability. Specifically, he asserts claims under 18 U.S.C. § 1512, "Tampering with a witness, victim, or an informant," § 1513, "Retaliating against a witness, victim, or an informant," § 241, "Conspiracy against rights," § 242, "Deprivation of rights under color of law," § 175, "Prohibitions with respect to biological weapons," and Texas Penal Code "§ 16.029," which does not appear to exist, § 22.05, "Deadly conduct," § 22.01, "Assault," § 22.02, "Aggravated assault," and § 37.03, "Aggravated perjury." *See* Third Am. Compl. 10-12, 37-38, 46-52, 55-57, 61-63, 65, 67, 71-72, and 75. However, "a private party may not enforce criminal statutes through a civil action." *Mass v. McDonald's Corp.*, 2004 WL 2624255, at *5 (N.D. Tex. Nov. 12, 2004) (citations omitted) (dismissing Plaintiff's claim for criminal relief with prejudice as "legally untenable"); *see also Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir. 1960) ("The sections of Title 18 may be disregarded in this suit. They are criminal in nature and provide no civil remedies."); *Gill v. Texas*, 153 Fed. Appx. 261, 262 (5th Cir. 2005) (per curiam) ("Contrary to [plaintiff's] contention, 18 U.S.C. §§ 241 and 242 do not provide a basis for civil liability."). Accordingly, Plaintiff's claims for relief under Title 18 of the United States Code and the Texas Penal Code should be dismissed with prejudice.

This Court gave Plaintiff one final opportunity to plead his case; in response to the Court's Order, Plaintiff filed his Third Amended Complaint. Order (ECF No. 47). Because Plaintiff's Third Amended Complaint fails to state any claim against

---

[4] The Court discusses Plaintiff's "violation of wiretapping act with conspiracy" claim in subsection C above.

Defendants the Officers, all of Plaintiff's claims against them should be dismissed with prejudice.

## RECOMMENDATION

For the foregoing reasons, the Court should GRANT Defendant Dallas Fire-Rescue Department and Dallas Police Department's Rule 12(b)(6) Motion to Dismiss, (ECF No. 54), and Defendant Dallas Police Officers Andrew Lehocky, Howard Leftwich, Andrew Fuka, and Lisette Rivera's Rule 12(b)(6) Motion to Dismiss, (ECF No. 62), and DISMISS Plaintiff's claims against them with prejudice.

**SO RECOMMENDED.**

July 26, 2019.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## NSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).